**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

SAMUEL FRANCISCO PENSAMIENTO CHACON,
and
YARITZA GUADALUPE MORENO,

    Plaintiffs,

v.

WILLIAM P. BARR, in his official capacity as Attorney General of the United States;
MICHAEL R. POMPEO, in his official capacity as the U.S. Secretary of State;
CARL C. RISCH, in his official capacity as Assistant Secretary for Consular Affairs;
CHAD F. WOLF, in his official capacity as Acting Secretary of the Department of Homeland Security;
WILLIAM W. POPP, in his official capacity as the United States Ambassador to Guatemala;
DANIEL FENNELL, in his official capacity as Deputy Chief of Mission, Guatemala

    Defendants.

**COMPLAINT FOR MANDAMUS SEEKING TO
COMPEL THE ADJUDICATION OF IMMIGRANT VISA APPLICATION**

1. Plaintiffs Samuel Francisco Pensamiento Chacon (a citizen of Guatemala), and his wife Yaritza Guadalupe Moreno (a native citizen of the United States), bring this mandamus action to compel Defendants to complete the adjudication of Mr. Pensamiento Chacon's Immigrant Visa application, pending without meaningful action since October 8, 2019. This unreasonable delay of more than a year, and counting, is an ongoing violation of law, and has caused and continues to cause Plaintiffs great harm.

2. Plaintiffs married on August 16, 2016, after which Yaritza filed an I-130 Petition for Alien Relative on Samuel's behalf on September 19, 2016. Shortly after the I-130 was approved

1

on March 9, 2017, he filed an I-601A Application for Provisional Unlawful Presence Waiver. United States Citizenship and Immigration Services (USCIS) approved this waiver on February 22, 2019. Following approval of the waiver, United States Immigration and Customs Enforcement (ICE) agreed that Samuel was eligible to attend an Immigrant Visa (green card) interview in Guatemala and granted him Voluntary Departure (permission to leave the country voluntarily) in order to attend the interview. The approval by USCIS of Samuel's I-601 waiver and the approval by ICE of his request for Voluntary Departure were the last hurdles that Samuel needed to clear before finalizing his green card status at his Immigrant Visa Interview, scheduled for October 8, 2020 at the US Consulate in Guatemala City.

3. Excited and relieved to be finalizing the very last step in his lengthy immigration process, Samuel flew to Guatemala on or around the last day of September, 2019, to attend his Immigrant Visa interview and receive his Immigrant Visa. In doing so, Samuel left behind in the United States his pregnant wife Yaritza and their young toddler, "N", for what they all thought would be a brief trip. Yet Samuel's immigrant visa application remains un-adjudicated due to Defendants' failure to meaningfully act in violation of law and in derogation of, among other things, Samuel's constitutional right to due process. Indeed, Samuel traveled to Guatemala for the sole purpose of attending and concluding the Immigrant Visa process. And, as the sole breadwinner of the family, it was critical for Samuel to promptly return to his young family in the United States: Plaintiff Moreno, pregnant with the couple's second child, was in Massachusetts acting as caretaker of the couple's first child N—then an 18-month old toddler.

4. On October 8, 2019, Samuel attended an interview at the United States Embassy in Guatemala City, Guatemala, with personnel acting at the direction of Defendants. Subsequent to this interview, Defendants took no action, apart from asking Samuel to complete an additional

immigration questionnaire (Form 9555, introduced by the Trump Administration to solicit information about, among other things, immigrants' social media accounts), requiring him to attend a doctor's appointment and, following that, a second interview at the US Consulate in Guatemala City nearly four months later, in February, 2020.

5. In the interim, with Samuel stuck in Guatemala due to Defendants' failure to adjudicate his Immigrant Visa application after the first interview, Plaintiffs' second son was born—premature and severely underweight—without his father present. After Samuel's second interview finally occurred on February 4, 2020, Plaintiffs were crushed to learn that his application was placed into Administrative Processing without any explanation or follow-up.

6. Since then, Defendants have failed and refused to take any action on Samuel's visa application. In fact, Defendants have failed and refused to provide Plaintiffs with any information whatsoever as to why Samuel's case has languished without any action.

7. Plaintiffs file this lawsuit in order to ensure that Defendants will promptly resolve Mr. Pensamiento's Administrative Processing and adjudicate his Immigrant Visa application, so Samuel can return home to support his family and—meet his new son for the first time.

**I.   JURISDICTION AND VENUE**

8. Jurisdiction of the Court is predicated on 28 U.S.C. §§ 1331 and 1346(a)(2) in that the matter in controversy arises under the Constitution and laws of the United States, and the United States is a Defendant. This Court also has jurisdiction over the present action pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act; 5 U.S.C. § 702, the Administrative Procedures Act; and 28 U.S.C. § 1361, regarding an action to compel an officer of the United States to perform his or her duty. For the avoidance of doubt, Plaintiffs are not seeking review of a consular decision, but rather an order compelling that such a decision be made—as required under the law.

9. Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(e), at least because (a) a substantial part of the events and omissions giving rise to the claim occurred in this district, (b) Plaintiffs and their minor children reside in this district, (c) Plaintiff Moreno and Plaintiffs' minor children are present in this district, and (d) Defendants operate within and/or have significant ties to this district.

## II. PARTIES

10. Plaintiff Samuel Francisco Pensamiento Chacon (hereinafter "Plaintiff Pensamiento") is a citizen and national of Guatemala, and is the spouse of Plaintiff Moreno, a United States citizen. His place of residence is in Massachusetts.

11. Plaintiff Yaritza Guadulupe Moreno (hereinafter "Plaintiff Moreno") is a United States citizen whose permanent place of residence is in Saugus, Massachusetts.

12. Plaintiff Pensamiento is, and remains, physically present in Guatemala City, Guatemala, due to Defendants failure to act.

13. Defendant William P. Barr (or his successor in office), named in his official capacity, is the current Attorney General of the United States.

14. Defendant Michael R. Pompeo (or his successor in office), named in his official capacity, is the current Secretary of State of the United States.

15. Defendant Carl C. Risch (or his successor in office), named in his official capacity, is United States Assistant Secretary for Consular Affairs.

16. Defendant Chad F. Wolf (or his successor in office), named in his official capacity, is the current United States Acting Secretary of the United States Department of Homeland Security.

17. Defendant William W. Popp (or his successor in office), named in his official capacity, is the United States Ambassador to Guatemala.

4

18. Defendant Daniel Fennell (or his successor in office), named in his official capacity, is the current Deputy Chief of Mission, Guatemala.

### III. STATEMENT OF FACTS

19. Plaintiff Pensamiento fled his native Guatemala in 2013 fearing for his life and his safety, seeking a better life in the United States. In June of 2013, the situation in Guatemala had become dangerous for Samuel. Three policemen in Guatemala approached him about selling drugs on their behalf, ostensibly "to help them catch drug dealers." When Samuel refused, the police violently beat him and told him to "think about it." A week later, police again stopped Samuel. Again, they asked him to sell cocaine on their behalf, again purportedly "to help them catch drug dealers." Realizing that his life and safety were in grave danger, Samuel fled his native Guatemala for the United States in hope of a better life.

20. Once in the United States, Samuel reunited with his mother, who had previously emigrated to the United States, in Rhode Island and began to work at a restaurant. Wanting to gain his independence from his mother and to make a life for himself, Samuel moved to Massachusetts to work at another restaurant.

21. Plaintiffs met while they were both working at Yaritza's father's restaurant. *See* Declaration of Yaritza Guadalupe Moreno, dated October 17, 2017 ("Moreno Decl."), attached hereto as **Exhibit 1** at ¶¶ 8-9. They forged a strong bond instantly and, before Samuel's extended stay in Guatemala due to Defendants' inaction, they were inseparable. Eager to start a life and a family together, Samuel and Yaritza married on August 16, 2016. *Id.* at ¶¶ 4, 14-15.

22. In January of 2017, Yaritza learned that she was pregnant. Ex. 1 at ¶ 17. Both she and Samuel were excited at the prospect of beginning their family. *Id.* Due in part to this development, Samuel began the process of applying for lawful permanent residence (green card) status. As a first step, Yaritza filed an I-130, Petition for Alien Relative, on Samuel's behalf.

Because Samuel is the spouse of a U.S. citizen, visa availability is never an issue as there is no numerical limitation for immediate relatives of U.S. citizens. INA § 201(b)(2)(A)(i); 8 U.S.C. § 1151(b)(2)(A)(i).

23.     Tragically, Yaritza suffered a late-term miscarriage in June of 2017. Ex. 1 at ¶¶ 22-23. This loss affected both Samuel and Yaritza tremendously, but through this tragedy their bond only grew stronger—and strengthened their resolve to start a family. *See, e.g., id.* at ¶¶ 24-25. In May of 2018, they were rewarded with the birth of their first son, Nicholas.

24.     Samuel was the sole breadwinner providing for his young family. Samuel worked as a chef at Monument Restaurant in Charlestown, Massachusetts. Ex. 1 at ¶¶ 26. His biweekly salary covered the costs of rent, insurance, groceries, and other necessities the family needed. *Id.*

25.     In March of 2017, Samuel and Yaritza learned that Yaritza's I-130 petition on Samuel's behalf had been approved. *See* Notice of Approval of I-130 Petition, attached hereto as **Exhibit 2** (dated March 9, 2017). Shortly after the I-130 approval, Samuel filed an I-601A Application for Unlawful Presence Waiver. In support of that waiver, Yaritza wrote a declaration detailing her special bond with her husband, and how much she depends on him emotionally, psychologically, and financially. *See* Ex. 1, Moreno Decl. at ¶¶ 9-28. In her declaration, Yaritza explained in detail how Samuel helps keep her anxiety and depression at bay. *Id.* at ¶¶ 27-28. She also described the traumatic experience of losing their first child, and how it helped the couple to grow even closer to one another. *Id.* at ¶¶ 22-25.

26.     Yaritza also detailed the hardships she anticipated she would face if Samuel was not permitted to remain in the United States. Ex. 2 at ¶ 28. In particular, she emphasized that she would not be able to pay rent or the family bills, and she would be forced to move back in with

her parents in order to care for Plaintiffs' young son. *Id.* at ¶ 28. Further, she foresaw that Samuel's absence would take a toll on her anxiety and depression. *Id.* at ¶ 28.

27. Early in 2019, the Department of Homeland Security and USCIS approved the I-601A waiver. *See* Notice of Approval for I-601A Application, attached hereto as **Exhibit 3** (dated Feb. 9, 2019). Pursuant to 8 CFR 212.7(e)(12), the government indicated that Samuel was eligible to attend an Immigrant Visa interview in Guatemala, and granted him Voluntary Departure for the express purpose of traveling from the U.S. to Guatemala to fulfill the final step in his lengthy immigration process. *See id.* This final step included obtaining the determination of a U.S. consular officer that Samuel is eligible for an immigrant visa based on an approved immediate relative visa petition. *See id.*

28. During Samuel's Voluntary Departure hearing, the judge's lone line of questions addressed an incident in which Samuel was charged with leaving the scene of property damage.[1] Samuel explained that he drove a coworker home after work and, when another driver failed to stop at a stop sign, and the two cars collided with very minor damage. Because of Samuel's violent trauma at the hands of the police in Guatemala, he panicked and left the scene in fear of interacting with the police. Samuel acknowledged that this was a mistake (borne of his trauma-responsive panic), pleaded guilty, and paid a fine. This explanation satisfied the judge at this hearing, who granted Samuel Voluntary Departure to travel to Guatemala to finish his Immigrant Visa process.

29. Because Yaritza was pregnant with their second child, Samuel traveled to Guatemala alone on or about the last day of September, 2019, for the purpose of attending and concluding the Immigrant Visa process. Samuel expected—and in fact, as the sole breadwinner of the family, needed—to promptly return to his young family in the United States, where Yaritza,

---

[1] On information and belief, no transcript of this hearing exists.

7

pregnant with the couple's second child, cared for the couple's first child, then an 18-month old toddler.

30. Personnel acting at the direction of Defendants interviewed Samuel on October 8, 2019, at the United States Embassy of Guatemala in Guatemala City. At his interview, Defendants asked Samuel why his wife was not present; about the incident of leaving the scene of property damage; and (apropos of nothing) whether he had any relation to or involvement with "gangs" in Massachusetts.

31. Samuel explained that his wife was late in her pregnancy and, because of pre-existing conditions, doctors had advised her not to travel. Samuel also detailed what happened in regards to the leaving the scene of property damage incident. And he vehemently denied any relations to or involvement with any gang or gang members anywhere, whether in Massachusetts or elsewhere.

32. Following this interview, Defendants took no action—apart from asking Samuel to complete an additional immigration questionnaire (Form 9555, introduced by the Trump Administration to solicit, among other things, information about immigrants' social media accounts). They also required Samuel to attend a doctor's appointment, where he underwent a psychiatric evaluation, and a second interview at the U.S. Consulate in Guatemala City scheduled nearly four months later.

33. At that second interview on February 4, 2020, Defendants asked no further questions, merely requesting Samuel's passport. Just as with the first interview, Samuel promptly complied with that request. Plaintiffs waited anxiously for Defendants to act, as Samuel had already been stuck for months, far from his young family and without work, in Guatemala. But several days after the second interview, Plaintiffs were crushed to learn that Samuel's application

was refused under 221(g), and placed into "Administrative Processing" without any explanation or reasoning.

34. Plaintiffs have heard nothing since.

35. As a result, since late September of 2019, Samuel has been languishing in Guatemala, a place that he fled for fear of his safety, separated from his wife and young children. In the interim, with Samuel trapped in Guatemala due to the Defendants' inaction, Plaintiffs' second son was born—premature and severely underweight, requiring a lengthy stay in the hospital—without his father present.

36. In abdication of their statutory and other legal obligations, Defendants have, for over a year, failed to take any action on Samuel's Immigrant Visa application. In fact, they have failed to provide Plaintiffs with any information whatsoever as to why Samuel's case has languished in Administrative Processing without any meaningful action.

37. Because of Defendants' inaction, both Plaintiffs have suffered severe hardship. For example, Yaritza has been without her loving husband, father of her small children, and the sole breadwinner in the family. Moreover, Plaintiffs' second child, "M", was born prematurely, and severely underweight even for a premature baby. In fact, M was so underweight that he spent over a month in the Neonatal Intensive Care Unit (NICU) on a feeding tube. With her spouse stuck abroad due to Defendants' inaction, Yaritza struggled to care for both of her children, one of whom was fighting to gain weight in the NICU. Lacking consistent childcare options apart from sporadic support from family and friends, Yaritza daily traveled back and forth across Boston to the hospital to see her infant in the NICU while her older son napped.

38. As Yaritza presciently stated in her declaration in support of Samuel's I-601A waiver, without Samuel's help, she is presently unable to support her children alone. *See* Ex. 1, at

¶ 28. Just as she predicted, without Samuel, Yaritza could not act as sole caregiver to her children and simultaneously work to afford rent and other necessities. *Id*. at ¶ 28. As a result, she was forced to move in with her parents, upon whom she now relies in order to care for, support, and feed her children. *Id*. at ¶ 28. Further, she cannot seek employment to help support her family because she cannot afford adequate childcare for her two young sons. *Id*. at ¶ 28. On top of these practical considerations, Samuel's absence, caused by Defendants' inaction on his Immigration Visa application, has triggered and amplified Yaritza's anxiety and depression during a global pandemic as she struggles to figure out how to parent and to make ends meet without the presence and support of her husband.

39. For his part, Samuel has suffered since his arrival in Guatemala. He is now trapped in the very place he fled in fear of his life and safety seven years ago. Despite his concerted efforts, he has not been able to get a job in Guatemala to help support his family in the United States because of the COVID-19 pandemic. Samuel has been staying with relatives, but his mental health is deteriorating due to being away from his family—he is developing paranoia, afraid to go out for even basic errands in fear for his safety. Samuel is afraid to leave the house due to, among other things, pervasive violence within the community.

40. Due to Defendants' failure to observe their statutory duty to act on his Immigrant Visa application, to this day Samuel remains in Guatemala, separated from his wife and two young sons—all United States citizens—since early October, 2019.

41. In fact, Samuel has not yet met his youngest child.

42. Plaintiffs file this lawsuit to compel Defendants to (1) resolve the Administrative Processing attached to Samuel's case, and (2) adjudicate Samuel's Immigrant Visa application.

**IV.     CAUSES OF ACTION**

## COUNT I
## VIOLATION OF ADMINISTRATIVE PROCEDURES ACT

43.     Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-40 above.

44.     The Administrative Procedures Act, 5 U.S.C. § 555(b), mandates that an agency "shall conclude a matter presented to it" "within a reasonable time."

45.     Plaintiffs presented the matter of Mr. Pensamiento's Immigration Visa to Defendants over a year ago, yet Defendants have to date failed and refused to act. Instead, Defendants placed Plaintiff Pensamiento in "Administrative Processing" without explanation or discernible basis, and have neither resolved such Administrative Processing nor adjudicated his Immigration Visa application.

46.     Defendants have a non-discretionary duty to take the discrete actions of (a) resolving the pending Administrative Processing, and (b) adjudicating Plaintiff Pensamiento's Immigration Visa application.

47.     Defendants' failure (a) to resolve the Administrative Processing, and (b) to adjudicate and approve the Plaintiffs' Immigration Visa application, for over a year, constitutes an unreasonable failure to act on those non-discretionary duties to take such discrete actions.

48.     There is no other adequate remedy available to Plaintiffs, and they are clearly entitled to the relief requested.

49.     Defendants are in ongoing violation of the Administrative Procedures Act. *See, e.g.,* 5 U.S.C. § 555(b) and 5 U.S.C. § 706(1).

## COUNT II
## VIOLATION OF IMMIGRATION AND NATIONALITY ACT

1. Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-49 above.

2. Defendants' refusal to adjudicate Plaintiffs' Immigration Visa application violates the Immigration and Nationality Act, 8 U.S.C. § 1202(b), which mandates that "[a]ll immigrant visa applications shall be reviewed *and adjudicated* by a consular officer." (emphasis added). Mr. Pensamiento is therefore entitled to adjudication of his Immigrant Visa application.

3. Plaintiffs have a clear right to the relief requested, Defendants have a clear duty pursuant to the Immigration and Nationality Act to adjudicate Plaintiffs' Immigration Visa application, and there is no other adequate remedy available.

## COUNT III
## VIOLATION OF DUE PROCESS AND EQUAL PROTECTION

4. Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-47 above.

5. Defendants' failure to adjudicate and approve the Plaintiffs' Immigration Visa application denies Plaintiffs due process and equal protection of the laws guaranteed by the United States Constitution.

## PRAYER FOR RELIEF

The Plaintiffs request the Court to grant the following relief:

**A.** Order Defendants to immediately complete the Administrative Processing on Plaintiff Pensamiento's Immigration Visa application, or within 30 days from the filing of this complaint;

**B.** Order Defendants to immediately adjudicate Plaintiff Pensamiento's Immigration Visa application, or within 60 days from the filing of this complaint;

**C.** Retain jurisdiction during the adjudication of Plaintiff Pensamiento's Immigration Visa

application in order to ensure compliance with the Court's orders; and

    **D.** Grant such other relief as the Court may deem just and proper.


Dated: November 18, 2020                              Respectfully submitted,

                                                                            /s/ *Andrew H. DeVoogd*
                                                                            Andrew H. DeVoogd (BBO #670203)
                                                                             dhdevoogd@mintz.com
                                                                             Susan J. Cohen (BBO # 546482)
                                                                             sjcohen@mintz.com
                                                                             MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND
                                                                             POPEO, P.C.
                                                                             One Financial Center
                                                                             Boston, MA 02111
                                                                             617.542.6000

                                                                             *Attorneys for Plaintiffs*
                                                                             *Samuel Francisco Pensamiento Chacon and*
                                                                             *Yaritza Guadalupe Moreno*